United States District Court
Southern District of Texas
**ENTERED**
June 12, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE CO., *et al.*, §§§§ | |
| Plaintiffs, § | CIVIL ACTION NO. H-23-4492 |
| v. §§ | |
| PARETO SECURITIES, INC., *et al.*, §§ | |
| Defendants. §§ | |

## MEMORANDUM AND ORDER

The plaintiffs, American General Life Insurance Company and The Variable Annuity Life Insurance Company (together, the "Insurance Companies") are regulated annuity and life insurance companies based in Houston, Texas. (Docket Entry No. 1 at ¶ 14). The Insurance Companies offer life insurance products to customers throughout the United States and internationally. The Insurance Companies invest premiums into various investment vehicles to generate revenues which are used to pay life insurance claims. (*Id.*)

The defendants are Pareto Securities AS ("Pareto AS") and Pareto Securities, Inc. (together, "Pareto"). Pareto AS is a global investment bank organized and headquartered in Norway, specializing in maritime and aquaculture industries. (*Id.* at ¶ 18). Pareto Inc. is incorporated in Delaware and has its principal place of business in New York, as well as an office in Houston, Texas. (*Id.* at ¶ 19). Pareto Inc. is a wholly owned subsidiary of Pareto AS. (*Id.*)

The Insurance Companies entered into a note purchase agreement in January 2019 to invest $75 million in notes issued by GT USA Wilmington, LLC ("GTW"). The GTW notes were sold

to the Insurance Companies by Pareto. (*Id.* at ¶ 1).  The Insurance Companies allege that Pareto was "in regular and frequent communication" with them, but that Pareto "expressly denied [them] access to GTW." (*Id.* at ¶ 3). The Insurance Companies allege that although Pareto informed them that GTW would take over all stevedoring operations at a particular port leading to a large increase in revenue, Pareto allegedly failed to inform the Insurance Companies that GTW had repudiated its contract to take over the stevedoring operations at that port before the Insurance Companies invested $75 million in the GTW notes.  (*Id.* at ¶ 5).

At the end of 2019, GTW's first-year revenues were half the projected amounts, and the company had a negative EBIDTA (Earnings Before Interest, Taxes, Depreciation, and Amortization). (*Id.* at ¶ 7). GTW and Pareto provided the Insurance Companies with reasons for this deficit, including a refinery fire and "geopolitical" delays, but those reasons did not include GTW's contract repudiation. (*Id.*). GTW defaulted on its debt service ratio covenants under the note purchase agreement in November 2019 and sent a letter informing the Insurance Companies of the default.

In November 2023, the Insurance Companies sued Pareto AS and Pareto Inc. under the Texas Securities Act.  Pareto AS moves to dismiss on the basis that the court lacks personal jurisdiction over it. (Docket Entry No. 6).  Pareto Inc. moves to dismiss on the basis that the statute of limitations bars this suit. (Docket Entry No. 7).  Based on the briefing, hearing, record, and applicable law, the court grants Pareto AS's motion to dismiss and denies Pareto Inc.'s motion to dismiss. The reasons are set out below.

## I.    The Legal Standards

### A.  Rule 12(b)(2)

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004). The Texas long-arm statute confers jurisdiction to the limits of due process. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008); *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.041–045; *see also Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Due process permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson*, 20 F.3d at 647).

  "Minimum contacts" can be established through evidence of "contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson*, 20 F.3d at 647. A court may exercise specific jurisdiction when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Gundle Lining Constr. Corp. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). To determine specific jurisdiction, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Id.* (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S.

235, 253 (1958)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Specific jurisdiction requires a "sufficient nexus" between the nonresident defendant's contacts forum contacts and at least one of the causes of action. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1390 (5th Cir. 1987). As part of the minimum-contacts analysis, a court evaluates any contracts, the parties' "actual course of dealing," and the parties' "prior negotiations and contemplated future consequences." *Burger King*, 471 U.S. at 479.

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, general jurisdiction may apply. Due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 414–15; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the nonresident defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine*, 897 F.2d 1359, 1362 (5th Cir. 1990). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart*, 772 F.2d at 1191).

"[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."

*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). "Likewise, when a group of affiliated corporations constitutes a single business enterprise, a court may 'disregard the concept of corporate separateness and extend liability to each of the affiliated corporations' for the purpose of preventing fraud or achieving equity." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 335 (5th Cir. 2007) (quoting *Brown v. Auto. Cas. Ins. Co.*, 644 So.2d 723, 727 (La. App. 1st Cir. 1994).

### B. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*,

556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## II.   Analysis

### A.  Personal Jurisdiction over Pareto Securities AS

It is undisputed that even though Pareto Inc. is incorporated in Delaware and headquartered in New York, the court has personal jurisdiction over Pareto Inc. because it has offices in Texas and does business in Texas. It is also undisputed that Pareto AS is not a Texas citizen and has no offices or operations in Texas. (Docket Entry No. 1 at ¶ 18). The Insurance Companies argue that the court may exercise specific personal jurisdiction over Pareto AS through a theory of "control person" liability, based on its relationship with Pareto Inc. (Docket Entry No. 1 at ¶ 71). The Texas Government Code, § 4008.055, provides, in relevant part:

> (a) . . . [A] person who directly or indirectly controls a seller, buyer, or issuer of a security is liable… jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer . . . (b) [unless the controlling person sustains the burden of proof that he did not know, and in the existence of reasonable care could not

6

have known, of the existence of the facts by reason of which the liability is alleged to exist. . . . (c) A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable . . . jointly and severally with the seller, buyer, or issuer and to the same extent as the seller, buyer, or issuer.

A "[c]ourt has personal jurisdiction over any Defendant as to which the Plaintiffs make a *prima facie* showing of control person liability." *McNamara v. Bre-X Minerals Ltd.*, 46 F. Supp. 2d 628, 636 (E.D. Tex. 1999); *see Cambria Cnty. Employees' Ret. Sys. v. Venator Materials PLC*, 532 F. Supp. 3d 440, 452 (S.D. Tex. 2021); *Chamberlain v. Optima Int'l Tr. Co., Ltd.*, 2006 WL 8431988, at *6 (W.D. Tex. Sept. 5, 2006). The Insurance Companies have the burden of demonstrating facts sufficient for a *prima facie* case for personal jurisdiction over Pareto AS, a foreign corporation. *Pervasive Software, Inc. v. Lexware GmbH & Co*., 688 F.3d 214, 219 (5th Cir. 2012).

The Insurance Companies argue that because Pareto Inc. is a wholly owned subsidiary of Pareto AS, that is sufficient for specific jurisdiction over Pareto AS. (Docket Entry No. 15 at 38–39). The basis for control person liability, according to the Insurance Companies, is that Pareto AS allegedly "directly controlled, and owned a 100% stake in, Pareto Inc., as set out in the latter's annual FINRA filings." (Docket Entry Nos. 1 at ¶ 22; 15 at 39). The Insurance Companies cite *Trendsetter Inv'rs, LLC v. Hyperdynamics Corp.*, 2007 WL 172627, at *26 (S.D. Tex. Jan. 18, 2007).  The Insurance Companies argue that control person liability existed in that case because "Trendsetter Production was operated as a 'mere tool and business conduit' of Hyperdynamics and that Hyperdynamics controlled Trendsetter Production—its wholly owned subsidiary—when the press releases were issued[.]"  But this is not the full picture. In *Trendsetter*, high level employees of Hyperdynamics were alleged to have "ignored, overruled and countermanded" employees of the subsidiary, Trendsetter Production, leading to the misrepresentations. *Id.* The allegations made

by Trendsetter were specific, including the names of the employees and the approximate dates of the controlling acts.

The Insurance Companies have not specifically alleged conduct by Pareto AS that would show its control over Pareto Inc. generally or that it controlled Pareto Inc.'s actions relating to the disputed transaction. The Insurance Companies provide one example of Pareto AS receiving a memorandum from GTW addressed to Pareto AS and others, as well as general allegations that Pareto AS "controlled the manner, means, and details of the placement of the Notes[.]" (Docket Entry No. 15 at 29).  This is not enough.  The allegations may not be "wholly conclusory"; the plaintiffs must "plead . . . specific facts" related to the misrepresentation or violation at issue. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 463 F. Supp. 2d 628, 642 (S.D. Tex. 2006). "[A] plaintiff must allege some facts beyond a defendant's position or title that show the defendant had actual power or control over the controlled person." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 380 (S.D. Tex 2011). The "power or influence" exercised by the control person must extend to "the specific transaction or activity [giving] rise to the underlying violation." *Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 559 S.W.3d 537, 555 (Tex. App.—Austin 2011, pet. dismissed).

The Insurance Companies' general and conclusory allegations do not state a claim for control person liability against Pareto AS. As a result, control person liability cannot be a basis for personal jurisdiction over Pareto AS.

The Insurance Companies also argue that Pareto AS subjected itself to personal jurisdiction in Texas by purposely availing itself of the privilege of doing business in Texas when it allowed Pareto Inc. to open a Texas office and sending emails to individuals located in that office. (Docket Entry No. 15 at 13–14). But the Insurance Companies do not allege specific actions by Pareto AS

8

targeted to Texas—they allege actions by "Pareto" generally that appear to refer to Pareto Inc., rather than Pareto AS. *See Kraemer v. RCLoft, LLC*, 2022 WL 17585797, at *2 (S.D. Tex. Dec. 9, 2022) (a court cannot "subject a non-resident corporate defendant to the exercise of personal jurisdiction merely because of its . . . subsidiary's acts."). The Insurance Companies allege that emails may have been sent from Pareto AS employees in Norway to individuals in Texas, but that is insufficient. The Insurance Companies fail to plead facts that would connect Pareto AS's alleged contacts in Texas to the disputed transaction, as required for specific jurisdiction.

The present record is insufficient to support personal jurisdiction over Pareto AS.

### B. The Statute of Limitations

The Texas Securities Act requires plaintiffs to commence an action within three years from the date they knew, or should have learned through reasonable diligence, of the alleged fraud. Tex. Gov't Code § 4008.062(b). Pareto argues that the claims brought by the Insurance Companies are barred by limitations because the Companies were on notice of the alleged fraud in November 2019, following GTW's default, but they did not file suit until 2023. (Docket Entry No. 7 at 11). The Insurance Companies respond that the notice they received in November 2019 was insufficient to trigger limitations, and that whether they were diligent in filing suit is a fact question for the jury.

"What constitutes a sufficient storm warning isn't subject to precise definition, depending instead upon pertinent facts and their context." *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 667 (S.D. Tex. 2021). The warning "must rise to a level of more than mere suspicion; they must instead be sufficiently confirmed or substantiated to a point at which the victims are incited to investigate" and must "relate[] directly to the misrepresentations and omissions the plaintiffs later allege in their action against the defendants." *Id*. (internal quotations omitted).

"A written statement available to the victims of fraud that reveals that a fraud has been committed furnishes constructive or inquiry notice of the fraud, and constructive notice creates a duty of diligent inquiry." *Martinez Tapia v. Chase Manhattan Bank, N.A*, 149 F.3d 404, 409-410 (5th Cir. 1998) (internal quotations omitted). In *Martinez Tapia*, the court found that a single letter sent to the plaintiff stating that redemptions in the investment fund had been suspended constituted inquiry notice and triggered the limitations period that barred suit. "Courts generally hold that receiving information reflecting investment performance broadly inconsistent with the counterparty's representations about the character of the investment triggers inquiry notice." *Gallier v. Woodbury Fin. Servs.*, 2016 WL 4765059, at *6 (5th Cir. 2016). The *Gallier* court found that the receipt of account statements contrary to the seller's representations was sufficient to put the plaintiffs on notice of a claim, even if the seller misled them about the cause of the discrepancies. *Gallier*, 2016 WL 4765059 at *6.

The Insurance Companies concede that their investigation into documents provided to them as early as January 2019 was the basis for their discovery of the alleged fraud. (Docket Entry No. 1 at ¶ 63). Pareto argues that the Insurance Companies had all the information needed to discover the alleged misrepresentations before they purchased the GTW notes in January 2019. (Docket Entry No. 7 at 7). The dispute between GTW and another stevedoring operator was contained in publicly available court documents as early as 2019. (Docket Entry Nos. 7 at 11; 15 at 27). The Insurance Companies argue, correctly, that they had no affirmative obligation to search court records when the parties entered into the purchase agreement. *See Khoury v. Tomlinson*, 518 S.W.3d 568, 582 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("A purchaser of a security has no duty of due diligence to verify the veracity of a seller's claims."). In November 2019, GTW sent the Insurance Companies a letter stating that GTW would be defaulting on its debt service

ratio covenants in the purchase agreement. (Docket Entry No. 1 at ¶¶ 60–61). The Insurance Companies argue that this letter, by itself, was not a "storm warning" sufficient to put them on notice of misrepresentation or fraud in November 2019, although there is case law to the contrary. *See, e.g.*, *Martinez Tapia*, 149 F.3d at 409-410.

The Insurance Companies point out that "[o]rdinarily, what constitutes reasonable diligence to discover fraud is a question of fact for the jury." *Margolies v. Deason,* 464 F.3d 547, 553-54 (5th Cir. 2006) (internal quotations omitted). Because "courts may weigh such matters differently, such a decision is often inappropriate under Rule 12(b)(6) review." *In re Enron Corp.*, 540 F. Supp. 2d at 817. Following this circuit case law, the court rules that the present record is inadequate to rule on the statute of limitations issue. This ruling does not foreclose Pareto from reurging limitations on the basis of a fuller record.

### C.  Seller Status

In its briefs, Pareto Inc. argued that it was not a "seller" under the Texas Securities Act, but later conceded that it was a "seller" during the hearing on the motion to dismiss. (Docket Entry No. 21). Under the Act, "a seller . . . can include [a] person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner, such as a broker." *Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 741 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (internal quotations omitted). Pareto Inc. is treated as a "seller" under the Act.

### III.   Conclusion

The court grants Pareto AS's motion to dismiss for lack of personal jurisdiction, (Docket Entry No. 6), and dismisses Pareto AS as a party. The court denies Pareto Inc.'s motion to dismiss on the basis of limitations, without prejudice to reurging the argument at a later stage of the

litigation.  The court also denies Pareto Inc.'s motion to dismiss the Texas Securities Act claims, because it is a "seller." (Docket Entry No. 7).

SIGNED on June 12, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge